<u>**UNITED STATES BANKRUPTCY COURT**</u>
<u>**FOR THE DISTRICT OF COLORADO**</u>

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 12-27630-MER |
| DAVID RAY MENDOZA, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| DAVID RAY MENDOZA, and KAWAAN | ) | |
| HALL, individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Adversary Proceeding No. 22-_____ |
| | ) | |
| v. | ) | |
| | ) | |
| NAVIENT SOLUTIONS, LLC, and | ) | <u>**DISTRICTWIDE CLASS ACTION**</u> |
| NAVIENT CREDIT FINANCE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

---

**PLAINTIFFS' CLASS ACTION COMPLAINT**

---

Plaintiffs David Ray Mendoza and Kawaan Hall ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through the undersigned counsel, hereby file this Complaint against Defendants Navient Solutions, LLC ("Navient Solutions") and Navient Credit Finance Corporation ("NCFC", together with "Navient Solutions," "Defendants") upon personal knowledge as to those matters to which he or she has personal knowledge, and upon information and belief as to all other matters, and state as follows:

## I.      PRELIMINARY STATEMENT

1.      Not all loans made to students are non-dischargeable student loans,

including the educational loans at issue in this action. Defendants, who knew or should have known the scope and application of 11 U.S.C. § 523(a)(8), have transcended the statutory framework protecting qualified education loans from discharge in bankruptcy in an attempt to appropriate bankruptcy protection for a large universe of dischargeable consumer debt. Such loans have no protection under section 523(a)(8) and are automatically discharged upon entry of a bankruptcy court's discharge order and the accompanying statutory injunction effected by the discharge order.

2.      Defendants have been originating and servicing dischargeable consumer loans but treating them as non-dischargeable student loans. Defendants have done this in order to discourage debtors from seeking their rights to relief under Title 11 and to purport to allow creditors to continue to collect on discharged loans after a debtor's bankruptcy. In order to effectuate this illegality, Defendants appropriated a legal presumption for a class of debt that they knew or should have known is not entitled to that presumption, thereby using the authority of the bankruptcy courts to cloak their fraud under the color of law and escape detection. As a result, Defendants engaged in a pattern and practice targeted at some of society's most vulnerable persons that they know defiles the proper workings of the bankruptcy process. Plaintiffs bring this action to enforce their rights, and the rights of those similarly situated, to a fresh start pursuant to the Bankruptcy Code.

## II.      JURISDICTION AND VENUE

3.      This Adversary Proceeding is brought under Case Number 12-27630-MER.

4.      This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(b), 1332, and 1334(b).[1] This is a core proceeding under Title 11 because it concerns

---

[1] *In re Wilborn*, 609 F.3d 748, 754 (5th Cir. 2010) ("[C]lass action proceedings are expressly allowed in the Federal Bankruptcy Rules, which provide that the requirements for class actions under Federal

determinations as to the dischargeability of debts.

5.     This Adversary Proceeding is brought pursuant to 11 U.S.C §§ 105, 523(a)(8), and 524, and Federal Rule of Bankruptcy Procedure Rule 7001(9).

6.     No Motion to Reopen the underlying bankruptcy case has been filed in light of L.B.R. 5010-1(c), which states:

> An adversary proceeding to determine the dischargeability of a debt under Fed. R. Bankr. P. 4007(b) or for declaratory relief regarding the effect of a discharge under 11 U.S.C. § 524(a) may be commenced, maintained and concluded whether or not the underlying bankruptcy case has been closed under Fed. R. Bankr. P. 5009 or reopened under Fed. R. Bankr. P. 5010, unless otherwise ordered by the Court.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1409 because Plaintiffs and many of the Class Members reside in this district, obtained their bankruptcy discharges in this district, and some of the conduct complained about occurred in this district.

### III. PARTIES

8.     PLAINTIFF DAVID RAY MENDOZA is an individual and a resident of this district who filed for relief under Chapter 7 of Title 11 of the United States Code in August 2012 and received a Discharge Order and the entry of the statutory injunction in December 2012. His bankruptcy proceeding took place in the District of Colorado in the United States Tenth Circuit.

9.     PLAINTIFF KAWAAN HALL is an individual and a resident of this district who filed for relief under Chapter 13 of Title 11 of the United States Code in October 2010 and received a Discharge Order and the entry of the statutory injunction in March 2016. Her bankruptcy proceeding took place in the District of Colorado in the United States Tenth Circuit.

10.     The Class Members are similarly situated individuals who filed for bankruptcy

---

Rule of Civil Procedure 23 apply in adversary proceedings. See Fed. R. Bankr. P. 7023. Although a federal rule may not extend a court's jurisdiction, its intended purpose should be upheld so long as it otherwise offends no substantive rights. We see no such result here. On the contrary, if bankruptcy court jurisdiction is not permitted over a class action of debtors, Rule 7023 is virtually read out of the rules.").

protection since 2005 in the District of Colorado with pre-petition educational loans originated

and/or serviced by Defendants or their predecessors for education at institutions that are not

recognized as eligible institutions under Title IV of the Higher Education Act and the Internal

Revenue Code. These loans are fully dischargeable under § 523(a)(8) of the Bankruptcy Code.

Nonetheless, the Class Members have been subject to attempts by Defendants to induce payment

and collect on such loans despite the loans having been discharged in bankruptcy.

11.     Defendant NAVIENT SOLUTIONS, LLC is a limited liability company

organized and existing under the laws of the State of Delaware, that in the ordinary course of

business regularly, on behalf of itself or others, has engaged in, and/or currently engages in the

origination, servicing, and collection of consumer debt. Navient Solutions, LLC is authorized to

do business in the State of Colorado and may be served through its Registered Agent,

Corporation Service Company, 1900 W. Littleton Boulevard, Littleton, CO 80120.

12.     Defendant NAVIENT CREDIT FINANCE CORPORATION is a business

corporation organized and existing under the laws of the State of Delaware that in the ordinary

course of business regularly, on behalf of itself or others, has engaged in, and/or currently

engages in the origination, servicing, and collection of consumer debt throughout the United

States, including in Colorado. Upon information and belief, NAVIENT CREDIT FINANCE

CORPORATION is not authorized to do business in the State of Colorado. Its principal place of

business is in Herndon, Virginia, and it can be served through its Registered Agent, Corporation

Service Company, 100 Shockoe Slip Floor 2, Richmond, VA, 23219 - 4100.

### IV.     STATEMENT OF FACTS

A.     **A History of Non-Dischargeability of Student Loans**

13.     In 1978, there was a growing concern that students were taking advantage of the

Bankruptcy Code by incurring extensive student loan debt and then declaring bankruptcy soon after graduation. In response, Congress enacted section 523(a)(8) of the Bankruptcy Code to prohibit the discharge of federal student loans during the first five years of repayment (unless payment would constitute an undue hardship). Through a series of amendments, which first lengthened and then eliminated the five-year non-dischargeability time frame, it has become increasingly difficult for debtors to attain discharges of their student loan debts.

14.      Although the rationale behind section 523(a)(8) has been questioned by many scholars,[2] the justification for excepting federal student loan debt from discharge was not without some merit. In fact, in the age of soaring tuition costs, the original justification has become more compelling. Section 523(a)(8) serves not only to protect the taxpayers, but also to preserve the solvency of student lending programs for the next generation of students.

15.      In 2005, after extensive lobbying, private education lenders and debt collectors won limited protection in bankruptcy for some of their educational loan products.[3] Specifically, Congress limited protection for private education loan instruments to the extent that such money supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools for tuition, room, board, and books ("Qualified Education Loans").[4]

---

[2] *See* Rafel I. Pardo & Michelle R. Lacey, THE REAL STUDENT-LOAN SCANDAL: UNDUE HARDSHIP DISCHARGE LITIGATION, 83 Am. Bankr. L.J. 179, 181 (2009) ("Tragically, Congress disregarded empirical evidence from a General Accounting Office study which found that less than one percent of all federally insured and guaranteed student loans were discharged in bankruptcy. Simply put, the discharge of student loans in bankruptcy was too minor to threaten the economic viability of the student-loan program.").

[3] Bankruptcy Abuse and Consumer Protection Act Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereinafter "BAPCPA").

[4] *In re Decena,* 2016 WL 1371031, at *6 (Bankr. E.D.N.Y. Apr. 4, 2016) ("[S]ection 523(a)(8)(B) excepts from discharge loans for attending an 'eligible educational institution,' recognition of which is dictated by the Federal School Codes List for the years 2004–05, which identify '[a]ll postsecondary schools that are currently eligible for Title IV aid.'").

16.     But commercial lenders were not satisfied with the origination volume of Qualified Education Loans. The paperwork was burdensome, schools would not certify sums in excess of tuition, and the Title IV accreditation requirement prevented lending to thousands of for-profit colleges and high schools that had not obtained Title IV accreditation. Thereafter, private commercial lenders initiated new programs that lent money directly to students attending unaccredited schools (hereinafter, "Consumer Education Loans"). Consumer Education Loans were much easier to originate because they bypassed the certification requirements codified in the Higher Education Act. Because the schools were not Title IV-eligible, these loans were not and are not Qualified Education Loans. Like student credit card debt, they are simply unsecured consumer debts and are discharged automatically upon entry of a discharge injunction.

**B.     The Application of Section 523(a)(8) of the Bankruptcy Code**

17.     Prior to 2005, section 523(a)(8) was easy to apply because the exception to dischargeability was absolute. If a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of "undue hardship." This fueled the belief and common misconception that all student loans are non-dischargeable. But private lenders were only given qualified protection in 2005 such that section 523(a)(8)(B) only excepts some private education loans from discharge.[5] This created an opportunity for unscrupulous creditors to exploit the application of section 523(a)(8) and deceive debtors into thinking that all Consumer Education Loans, like their federal cousins, were excepted from discharge.

18.     This problem was made worse because section 523(a)(8) is "self-executing" and thus its correct application relies on the good faith and honesty of creditors. When a debtor files a

---

[5] 11 U.S.C. § 523(a)(8)(B).

bankruptcy petition, the debtor includes all unsecured debts on a Schedule F form, listing only the amount of the debt, the name of the creditor, and the consideration received. After demonstrating compliance with the Bankruptcy Code, a court then issues an order discharging all pre-petition debts listed on the bankruptcy petition except for those listed in section 523(a).[6] Importantly, the discharge order does not specifically state which loans, if any, are presumptively excepted from discharge. Rather, it states that the order does not discharge some debts, including "debts for most student loans."

19.     If a creditor believes that a debt they hold is excepted from discharge, it is their legal burden to prove that the debt is encompassed by section 523(a)(8).[7] Once the creditor proves the debt is presumptively non-dischargeable, the burden then shifts to the debtor to prove that repaying the debt would constitute an "undue hardship."[8] Absent an adversary proceeding, any educational debt not encompassed by section 523(a)(8) is automatically and as a matter of law discharged upon entry of the discharge order.[9]   Accordingly, it is left to the creditors to

---

[6] 11 U.S.C.A. § 727(b) ("Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter.").

[7] *Owens v. Owens,* 155 F. App'x 42, 43 (2d Cir. 2005) ("It is the creditor seeking an exception to discharge who bears the burden of proving facts coming within one of the § 523 exceptions."); *In re Renshaw,* 222 F.3d 82, 86 (2d Cir. 2000) ("Because bankruptcy is both a right of the debtor, and a remedy for the creditor . . . a proper balancing of those competing interests requires the creditor to prove by a preponderance of the evidence that its claim is one that is not dischargeable."); *In re Metcha,* 310 F.3d 308, 311 (3d. Cir 2002) (stating that creditor opposing discharge has burden of establishing that the obligation is an educational loan under section 523(a)(8)).

[8] *See In re Bronsdon,* 435 B.R. 791, 796 (B.A.P. 1st Cir. 2010) ("The creditor bears the initial burden of establishing that the debt is of the type excepted from discharge under § 523(a)(8). Once the showing is made, the burden shifts to the debtor to prove that excepting the student loan debt from discharge will cause the debtor and her dependents 'undue hardship.'").

[9] *In re Meyer,* No. 15-13193, 2016 WL 3251622, at *2 (Bankr. N.D. Ohio June 6, 2016) ("For the reasons stated in the debtor's motions and the *Decena* decision, the Court finds that the debtor's student loans were discharged on September 16, 2015, because they do not fall within 11 U.S.C. § 523(a)(8). The Court further finds that the student loan servicers violated the discharge injunction of § 524(a)(2) by attempting to collect on the student loan accounts after the date of the

determine whether their particular educational loan is excepted from discharge by section 523(a)(8), and, where confusion exists, seek clarity from the court. The creditor's good faith and the threat of sanctions are the only checks on compliance with discharge injunctions.

## C.     Defendants' Misapplication of Section 523(a)(8) Damages the Plaintiffs and the Class by Treating Non-Qualified Student Loans as Non-Dischargeable

20.     Not content with the protections won from Congress in 2005, creditors soon devised a scheme to manipulate this presumption of non-dischargeability and deceive debtors, consumer bankruptcy practitioners and even the bankruptcy courts into thinking that all Consumer Education Loans, both qualified and non-qualified, to both accredited and unaccredited schools, were excepted from discharge. To effectuate this deceptive trade practice, creditors represented to student debtors that the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose.

21.     And so, a law that was originally designed to prevent students from taking advantage of the bankruptcy system enabled unscrupulous creditors to take advantage of the bankruptcy system. These loans are disproportionately issued to low income and minority students who lack the resources and knowledge to seek relief in an adversary proceeding, which is an expensive and time-consuming undertaking. In fact, only one tenth of one percent (0.1%) of debtors in bankruptcy seek to discharge their student debts.[10] In the rare event a debtor has filed an adversary proceeding, creditors often settle or forgive student debts that were already legally discharged, thereby preventing courts from discovering that these debts were never entitled to a

---

debtor's discharge.").

[10] Jason Iuliano, AN EMPIRICAL ASSESSMENT OF STUDENT LOAN DISCHARGES AND THE UNDUE HARDSHIP STANDARD, 86 Am. Bankr. L.J. 495, 505 (2012) (stating that in 2007, at least, only .01% of all debtors in bankruptcy with student loans filed an adversary proceeding seeking discharge).

presumption of non-dischargeability in the first instance, and ensuring that they are able to continue collecting on 99.9% of other discharged debts without consequence.

### D. Defendants Knew or Should have Known the Non-Qualified Student Loans at Issue Were Discharged in Bankruptcy

22.     Defendants operate one of the most sophisticated consumer financial services business in the United States – which historically focused on the origination and servicing of student loans.[11] The scope of its business is so pervasive that it also participates in the securitization of student loans for sale to institutional investors.

23.     Given their obligation to provide full and meaningful disclosures to institutional investors to avoid potential securities law violations (along with their intimate understanding of the contours of servicing student loans following a bankruptcy discharge), Defendants provided detailed warnings to investors that, pursuant to section 523(a)(8), that only private loans made for qualified expenses were excepted from discharge.[12]  In addition, Defendant Navient has been warning shareholders in investor presentations that Career Training loans—i.e., one form of non-qualified loans made to students at unaccredited colleges and high schools — are dischargeable in bankruptcy.[13] *See*, **Exhibit 1**. By 2014, Defendants had become more affirmative in the disclosures, admitting that "career training loans are generally dischargeable in bankruptcy".

---

[11] Defendant was previously Sallie Mae.

[12] *See* SLM Loan Trust 2008-1 Prospectus Supplement dated January 10, 2008, at 33 ("Risk of Bankruptcy Discharge of Private Credit Student Loans: Private credit student loans ***made for qualified education expenses*** are generally not dischargeable by a borrower in bankruptcy . . . direct-to-consumer loans are disbursed directly to the borrowers based upon certifications and warranties contained in their promissory notes, including their certification of the cost of attendance for their education. This process does not involve school certification as an additional control and, therefore, may be subject to some additional risk that ***the loans are not used for qualified education expenses***. If you own any notes, you will bear any risk of loss resulting from the discharge of any borrower of a private credit student loan to the extent the amount of the default is not covered by the trust's credit enhancement.") (emphasis added).

[13] There are many different "species" of Career Training loans (flight schools, private high school loans, tutoring loans, dog walking schools, etc.) that reside within the broader "genus" of non-qualified student loans.

*See*, **Exhibit 2.**

24.     Despite their intimate understanding and admissions regarding the dischargeability of non-qualified student loan debts following a bankruptcy discharge, Defendants exploited the common misunderstanding of non-dischargeability of all student loans after a bankruptcy discharge by continuing to collect on innocent consumer debtors with non-qualified student loans – all while Defendants knew or should have known that they were in fact already discharged in bankruptcy in a self-executing manner by operation of law.

25.     Nonetheless, over time, certain debtors and consumer attorneys began to take note and discovered this widespread trade practice. And of course, litigation ensued – and consumer debtors (David) began to take on Defendants (Goliath). And as it turned out in this case, David began to beat Goliath.

26.     The central issue in this bankruptcy student loan litigation was whether or not non-qualified student loans constituted an "educational benefit" for purposes of the exemption for discharge provided by § 523(a)(8)(A)(ii). In 2019, in a victory for consumer debtors, the Fifth Circuit held that certain non-qualified student loans were indeed discharged in bankruptcy as they were not an "educational benefit". See, *In re Crocker*, 941 F.3d 206 (5th Cir. 2019), as revised (Oct. 22, 2019) (holding that the term "educational benefit," as used in dischargeability exception, drew meaning from terms around it and could not be interpreted so broadly as to include private educational loans).

27.     The Tenth Circuit ultimately followed *Crocker* in siding with consumer debtors on this issue. In *McDaniel v. Navient Solutions*, the Tenth Circuit ruled that "the bankruptcy court did not err in ruling that § 523(a)(8)(A)(ii) does not except student loans from discharge and, consequently, that the exception does not cover the McDaniels' Tuition Answer Loans".

*McDaniel v. Navient Sols. (In re McDaniel)*, 973 F.3d 1083, 1104-05 (10th Cir. 2020). Given the self-executing nature of the bankruptcy discharge as well as the clarification on the issue provided by *McDaniel*, any consumer debtor with a non-qualified student loan within the Tenth Circuit (or the District of Colorado) would have had no obligation to repay such loans following a bankruptcy discharge given the binary proposition that a bankruptcy discharge represents (discharged or not).

28.     Unfortunately for the Plaintiffs and the Class, Defendants collected on these otherwise discharged student loans reaping millions of dollars of ill-gotten gains from consumer debtors throughout the United States. And, notwithstanding the state of the law following *McDaniel*, Defendants intend on continuing this pattern and practice with impunity to the Plaintiffs and the Class as evidenced by **Exhibit 3**.

29.     Plaintiffs and the Class now come before this Court to seek relief from not only Defendants' past transgressions, but also to put an end to this business practice once and for all. Plaintiffs and the Class seek to permanently enjoin the Defendants from post-discharge collections of any non-qualified student loans throughout the Tenth Circuit, as well as damages for payments made to Defendants on otherwise discharged loans by the Plaintiffs and the Class.

**E.     Plaintiff David Ray Mendoza's Background and Procedural History**

30.     Plaintiff David Ray Mendoza attended the Cook Street School of Fine Cooking in Denver, Colorado during or around 2009. At all relevant times, Cook Street School of Fine Cooking was not a Title IV eligible institution.

31.     On or about September 8, 2009, Plaintiff Mendoza borrowed over $20,000 from Sallie Mae, one of Navient's predecessors-in-interest, to use for expenses related to attending this non-Title IV institution.

32.     The loans made to Plaintiff Mendoza were not made to a student attending an eligible institution and thus were not qualified education expenses under section 523(a)(8)(B), or otherwise protected as educational loans or educational grants under section 523(a)(8).

33.     On August 23, 2012, Plaintiff Mendoza filed a petition for relief under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Colorado. Plaintiff Mendoza properly listed the loans at issue on the Schedules to his Bankruptcy Petition. On December 6, 2012, this Court entered a Discharge Order in Plaintiff Mendoza's case.

34.     Defendants received notice of the filing of Plaintiff Mendoza's Bankruptcy Petition, and also received notice of the Bankruptcy Court's December 6, 2012 Discharge Order.

35.     After Plaintiff Mendoza's Discharge Order was granted, Defendants continued in their attempts to collect on and accept payments toward the discharged loans and thereby causing damage to Plaintiff Mendoza by collecting, accepting, and retaining payments for otherwise discharged debts.

**F.     Plaintiff Kawaan Hall's Background and Procedural History**

36.     Plaintiff Kawaan Hall attended the Kennedy Western University, an online school, during or around 2002. At all relevant times, Kennedy Western University was not a Title IV eligible institution.

37.     On or about November 18, 2002, Plaintiff Hall borrowed over $5,000 from Sallie Mae, one of Navient's predecessors-in-interest, to use for expenses related to attending this non-Title IV institution.

38.     The loans made to Plaintiff Hall were not made to a student attending an eligible

institution and thus were not qualified education expenses under section 523(a)(8)(B), or otherwise protected as educational loans or educational grants under section 523(a)(8).

39.     On October 10, 2010, Plaintiff Hall filed a petition for relief under Chapter 13 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Colorado. Plaintiff Hall properly listed the Private Navient Loans on the Schedules to her Bankruptcy Petition. On March 10, 2016, this Court entered a Discharge Order in Plaintiff Hall's case.

40.     Defendants received notice of the filing of Plaintiff Hall's Bankruptcy Petition, and also received notice of the Bankruptcy Court's March 10, 2016 Discharge Order.

41.     After Plaintiff Hall's Discharge Order was granted, Defendants continued to collect on and accept payments toward the discharged loans and thereby causing damage to Plaintiff Hall by collecting, accepting, and retaining payments for otherwise discharged debts.

42.     After Plaintiff Hall's Discharge Order was granted, Defendants continued to report derogatory information to credit reporting agencies related to discharged debts, thereby causing damage to Plaintiff Hall.

**G.     All Class Members Share a Similar Narrative.**

43.     All Class Members share a similar factual narrative.

44.     All Class Members borrowed loans that were originated by Defendants or had loans that were serviced and/or collected by Defendants.

45.     All Class Members attended non-Title IV institutions as those institutions are defined by the Internal Revenue Code.

46.     All Class Members filed for bankruptcy protection in a United States Bankruptcy Court within the District of Colorado.

47.     At the conclusion of their bankruptcy cases, all Class Members were issued Discharge Orders.

48.     The statutory injunction effected by these Discharge Orders extinguished all education-related debt that was not excepted from discharge by 11 U.S.C. § 523(a)(8).

49.     Notwithstanding the discharge of these debts, Defendants continued to collect, accept and retain payments from the Class Members on otherwise discharged debts.

50.     Defendants have sought to collect and collected on discharged debts by use of dunning letters, emails, text messages, and telephone calls demanding repayment. In addition, to attempts to compel payment on these discharged debts, Defendants have continued to report these debts as delinquent to the major credit bureaus and have failed to update these credit reports.

## V.     CLASS ACTION ALLEGATIONS

51.     Pursuant to Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves, and all other persons similarly situated in the District of Colorado, as representatives of the following class:

> Citizens of the District of Colorado who filed for bankruptcy in a United States Bankruptcy Court within the United States District of Colorado and were issued discharge orders from the United States Bankruptcy Court within the District of Colorado since October 17, 2005 (the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act), who:
>
> a)   Before filing for bankruptcy, obtained or were co-signers on Consumer Education Loans made or serviced by Defendants or their predecessors-in-interest that were not made under any program funded in whole or in part by a non-profit institution to cover expenses at ineligible institutions as that term is defined in 11 U.S.C. § 523(a)(8)(B) and 26 U.S.C. § 221(d)(1); and
> b)   Have never reaffirmed any pre-petition private loans described within a) above; and
> c)   Have nonetheless been subjected to Defendants' trade practice of attempting to induce payment and/or collect on and/or Defendants' successful inducement of payment and/or collection on these discharged private loans.

52.     Plaintiffs reserve the right to amend this class definition and/or add subclasses to include or exclude members of the class.

53.     As described below, this action satisfies the numerosity, commonality, typicality, superiority, predominance, and adequacy of representation requirements of Rule 23 of the Federal Rules of Civil Procedure.

**A.     Numerosity**

54.     The persons in the class of Plaintiffs are so numerous that joinder of all members is impracticable. In the interest of judicial economy, this dispute should be resolved through the class action vehicle.

55.     Upon information and belief, the number of Plaintiffs will likely exceed 500 individuals. The quantity, identity, and location of Class Members are ascertainable through appropriate discovery and may be identified by the records maintained and possessed by Defendants.

56.     The Class Members have been through bankruptcy within the last seventeen years.

57.     Upon information and belief, the individual members of the class of Plaintiffs, or at least a large portion thereof, lack the means to pursue these claims individually and severally.

**B.     Commonality**

58.     There are common questions of law and fact affecting the entirety of the class.

59.     Specifically, predominant common questions include without limitation: (i) whether or not the loans at issue were discharged at the conclusion of the Plaintiffs' and Class Members' bankruptcy; (ii) whether or not Defendants violated the applicable Discharge Orders

by seeking to collect and collecting on discharged debts; and (iii) whether Defendants have damaged the Plaintiffs and the Class by collecting on discharged debts. Answers to these common questions will resolve the question of damages shared by each member of the class.

**C.    Typicality**

60.    Plaintiffs' claims against Defendants are typical and representative of those of all Class Members. Specifically, their Consumer Education Loans are not debts for qualified student loans, as with the other Class Members; they attended a non-Title IV institution, as with the other Class Members; and upon information and belief, their Consumer Education Loans are based upon loan documents that are substantially the same, if not identical, to the other Class Members' loan documents.

61.    Plaintiffs' experiences having been subjected to collection efforts by Defendants and making payments on discharged loans to Defendants are typical and representative of the Class. Defendants' actions involving Plaintiffs are typical of the Defendants' actions involving the other Class Members.

62.    Specifically, the Consumer Education Loans at issue were issued for attendance at non-Title IV schools that Defendant Navient or its predecessor-in-interest issued to the Class Members. The terms of the loans that were issued to Plaintiffs are substantially the same as the terms of the loans that were issued to the Class Members.

**D.    Adequacy of Representation**

63.    Plaintiffs' Counsel will fairly and adequately represent and protect the interests of the Members of The Class of Plaintiffs. Plaintiffs' interests are squarely aligned with those of individual members of the Class. Plaintiffs' counsel, Joshua B. Kons and Aaron Israels, are experienced in class action lawsuits, complex commercial litigation, bankruptcy law and

procedure, and student loan bankruptcy litigation.

**E.**   **Rule 23(b) Allegations**

64.    There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. The questions include, but are not limited to:

a)    whether the Plaintiffs' and Class Members' loans were discharged at the conclusion of their bankruptcy cases;

b)    whether Defendants violated the applicable Discharge Orders by collecting on discharged debts, and accepting payments for discharged debts; and

c)    whether the Plaintiffs and Class Members have been damaged by Defendants' collection of discharged debts, and retention of payments made thereon.

65.    This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, with respect to individual Class Members, which would establish inconsistent standards of conduct for Defendants, as well as, as a practical matter, be dispositive of the interests of other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

66.    Defendants have acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

67.    A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class Members may be

obtained from Defendants' records.

## V.      CLAIMS FOR RELIEF

### Count One: Declaratory Judgment and Injunctive Relief

68.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

69.     Plaintiffs request a declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that the Plaintiffs' and the other Class Members' loans are dischargeable student loans or are not Qualified Education Loans under section 523(a)(8), and were therefore discharged upon entry of their respective statutory injunctions effected by their Discharge Orders.

70.     Plaintiffs request preliminary and permanent injunctive relief prohibiting Defendants from continuing to seek collection on the Plaintiffs' and the Class Members' discharged debts.

### Count Two: Violations of the Statutory Injunction Effected by the Discharge Orders

71.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

72.     Plaintiffs' and other Class Members' loans were discharged pursuant to the statutory injunction effected by the Discharge Orders entered by the various courts because they were unsecured consumer loans and not non-dischargeable student loans under section 523(a)(8).

73.     Defendants were notified of the Discharge Orders pursuant to Federal Rule of Bankruptcy Procedure 4004(g).

74.     Defendants nonetheless sought to collect on these debts, either directly or indirectly, by use of dunning letters, emails, text messages, telephone calls, negative reports

made to the major credit bureaus, failure to update these credit reports, and commencing or continuing legal action to recover the discharged debts in violation of 11 U.S.C § 524.

75.     Plaintiffs request that Defendants be cited for contempt and ordered to pay compensatory and punitive damages in an amount to be determined at trial for the willful violations of the discharge injunctions and section 524 pursuant to 11 U.S.C § 105, and also request an award of attorneys' fees and costs.

## **PRAYER**

76.     In light of the foregoing, Plaintiffs request that Defendants be cited to appear and judgment be entered against Defendants for:

a)      Declaratory relief in the form of a judgment entered to the effect that Plaintiffs' and the other Class Members' loans were discharged upon entry of the applicable statutory injunctions effected by the Discharge Orders;

b)      Injunctive relief prohibiting Defendants from continuing to collect on discharged debts;

c)      Compensatory and punitive damages and monetary sanctions for violations of the Discharge Orders and statutory injunction;

d)      Attorneys' fees and costs to the fullest extent permitted under the law;

e)      Prepetition and post-judgment interest; and

f)      Other such relief as the Court deems just and proper.

/ / /

Dated: November 9, 2022            Respectfully submitted,
**DAVID RAY MENDOZA, and KAWAAN HALL**

*/s/ Aaron Israels*
Aaron Israels (42839)
Israels & Neuman PLC
100 Fillmore Street, 5th Floor - #76
Denver, Colorado 80206
T: (720) 599-3505
F: (720) 230-5455
aaron@israelsneuman.com

*/s/ Joshua Kons*
Joshua Kons (CT 434048)
92 Hopmeadow Street, Suite LLl
Weatogue, CT 06089
T: 860-920-5181
joshuakons@konslaw.com
Admitted in the District of Colorado

*Counsel for Plaintiffs and the Proposed Class*